**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| CURTIS  RATLIFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MENARD, INC., doing business as | ) | |
| MENARDS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | Case No. 1:11-cv-00888-TWP-DKL |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Menard, Inc.'s ("Menards") motion for summary judgment (Dkt. 38).  Plaintiff Curtis Ratliff ("Mr. Ratliff") is an electrician who was hired by Menards as an independent contractor to complete repairs in the Camby, Indiana store. While attempting to reach an outside light fixture, Mr. Ratliff climbed atop a chain-link fence cage structure and fell approximately thirteen feet to the ground when the structure collapsed. Mr. Ratliff filed this suit alleging negligence on behalf of Menards that caused his injuries. Menards counter-claimed for the damage caused to the structure by Mr. Ratliff's fall.  Menards has filed for summary judgment on both Mr. Ratliff's claim and its counter-claim.   For the following reasons, the motion (Dkt. 38) is **DENIED**.

## I.  BACKGROUND

Mr. Ratliff is a self-employed electrician and owns Ratliff Electric, Inc.  Menards is a home improvement store with numerous locations.  Prior to October 13, 2009, Mr. Ratliff had completed electrical work for Menards approximately 200 times; specifically, Mr. Ratliff did

electrical work for the Camby, Indiana location approximately once per week.[1]  The week before October 13, 2009, Mr. Ratliff was contacted by Derek Uran ("Mr. Uran"), the second assistant manager for the Camby Menards location.  Mr. Uran and Mr. Ratliff did a walk-through of the store to identify light fixtures that needed repair.  One of the light fixtures was located outdoors above a chain-link fence cage structure ("fence cage" or "fence cage structure").

According to Mr. Ratliff, when he saw the outdoor light fixture he told Mr. Uran that a "knuckle lift" was needed to access the light fixture above the fence cage.  Mr. Uran told Mr. Ratliff that a lift would cost too much, and implied that Menards would not pay for a lift in the future.  Mr. Uran then told Mr. Ratliff that the light fixture could be reached by using two-by-twelve walk-boards and a ladder on top of the walk-boards.[2]  Mr. Ratliff interpreted Mr. Uran to mean that this method had been used at other Menards locations, of which Mr. Uran had personal knowledge.  Mr. Ratliff left the conversation under the impression that Menards would not pay for a lift and that he needed to attempt the ladder and walk-board method to repair the light.

According to Mr. Uran, Mr. Ratliff asked whether a "knuckle lift" could be rented to reach the light fixture.  Mr. Uran responded by asking if there was any way the light fixture could be reached without using the lift.  Mr. Uran concedes that he made the suggestion that it might be possible to access the light fixture by using a ladder or multiple ladders to save the expense of using a lift.  Mr. Uran left the conversation without knowledge of how Mr. Ratliff would ultimately reach the light fixture.

On October 13, 2009, Mr. Ratliff arrived at the Camby Menards store to repair the list of light fixtures.  After repairing the indoor light fixtures, Mr. Ratliff and his assistant Matthew Hurt ("Mr. Hurt") pulled their van around to the fence cage.  Mr. Ratliff removed a twenty-four

---

[1] When discussing the incident at issue, the Court will regularly refer to the Camby, Indiana location as "Menards."

[2] Throughout the opinion, the Court refers to this as the "ladder and walk-board method."

foot extension ladder and a ten foot ladder from the van. He inspected the area and did not note any damage to the fence cage. He set up the twenty-four foot ladder against the wall near the fence cage. After climbing the ladder, he grabbed the nearest support bar and shook it to test its strength. Because it felt solid, Mr. Ratliff stepped onto the support bar. At some point, he also placed the ten foot ladder across several of the bars supporting the structure. Once he was standing on the first support bar of the fence cage, Mr. Ratliff told Mr. Hurt to "fetch" the walk-boards. Less than one minute after Mr. Hurt left the area, the fence cage collapsed and Mr. Ratliff fell approximately thirteen or fifteen feet to the ground. Mr. Ratliff sustained injuries as a result of the fall.

Mr. Ratliff filed suit against Menard, Inc. in Marion County Superior Court on June 15, 2011. Menards filed its Notice of Removal on June 30, 2011 (Dkt. 1). Thereafter, Menards filed the instant motion on May 29, 2012.

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490

(citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. <u>DISCUSSION</u>

### A.    **Standards for Analysis**

Mr. Ratliff alleges Menards is liable for his injuries due to its negligence in failing to maintain its premises in a reasonably safe condition for business invitees, failing to adequately inspect its premises for hazardous conditions, failing to post or otherwise give adequate warnings to its business invitees about the hazardous condition, and failing to remove a known hazardous condition from its premise. In Indiana, the three elements that a plaintiff must prove to succeed on a negligence claim are: (1) a duty owed to the plaintiff, (2) a breach of that duty by the defendant, and (3) the breach proximately caused the plaintiff's damages. *Bond v. Walsh & Kelly, Inc.*, 869 N.E.2d 1264, 1266 (Ind. Ct. App. 2007) (citing *Peters v. Foster*, 804 N.E.2d 736, 742 (Ind. 2004)). Breach of duty and proximate cause are generally issues of fact for a jury, but "whether a duty exists is a question of law for the court to decide." *Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind. 2004). The court may conclude as a matter of law that a breach of duty has occurred only where the facts are undisputed and lead to but a single inference or conclusion. *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003). Under Indiana law, independent contractors are considered business invitees and are owed a duty of care by a landowner.

The law of property owner liability is well settled in Indiana.

> Indiana law starts with the premise that a property owner is generally under no duty to provide independent contractors with a safe place to work, but is under a duty to keep the property in a reasonably safe condition. *Ozinga Transportation Systems, Inc. v. Michigan Ash Sales, Inc.,* 676 N.E.2d 379, 384 (Ind. Ct. App. 1997), citing *Ooms v. USX Corp.*, 661 N.E.2d 1250, 1252 (Ind. Ct. App. 1996). A landowner also generally has the duty to warn independent contractors of latent or concealed perils located on the premises. *Ozinga*, 676 N.E.2d at 384, citing *McClure v. Strother,* 570 N.E.2d 1319, 1321 (Ind. Ct. App. 1991). Furthermore, a landowner is liable "for reasonably foreseeable injuries to a contractor's employee caused by hazardous instrumentalities maintained by the landowner on the landowner's premises." *Ozinga*, 676 N.E.2d at 384, citing *McClure,* 570 N.E.2d at 1322 (other citations omitted). In summary, the duty owed by a landowner to his business invitees is "to keep its property in a reasonably safe condition . . . ." *Ozinga*, 676 N.E.2d at 384.

*Parojcic v. Bethlehem Steel Corp.*, 128 F.3d 601, 603 (7th Cir. 1997); *see Zawacki v. U.S.X.*, 750 N.E.2d 410, 414 (Ind. Ct. App. 2001). The Indiana Supreme Court has adopted the following definition of a landowner's duty to his business invitees:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell v. Meads*, 569 N.E.2d 637, 639–40 (Ind. 1991) (quoting Restatement (Second) of Torts § 343 (1965)). Section 343A of the Restatement, which is to be read along with § 343, further provides that

> [a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Thus, "it is appropriate, when determining whether a landowner breached its duty to an invitee, to consider the comparative knowledge of the landowner and the invitee." *Zawacki*, 750 N.E.2d at 414.

Menards raises the affirmative defense of incurred risk. "Incurred risk involves a mental state of venturousness on the part of the actor and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk." *Cole v. Lantis Corp.*, 714 N.E.2d 194, 200 (Ind. Ct. App. 1999). For incurred risk to bar a claim at the summary judgment stage "the evidence must be without conflict and the sole inference to be drawn is that the plaintiff had actual knowledge of the specific risk and understood and appreciated that risk." *Id.*

**B.    Whether Menards Breached Its Duty of Care**

**1.    The Parties' Arguments**

There is no dispute that Menards had a duty to keep its store in a reasonably safe condition and to warn Mr. Ratliff of any latent or concealed perils on the premises. Therefore, the main issue on summary judgment is a fact question generally reserved for the jury: did Menards breached its duty?

Menards contends it complied with its duty to keep its property in a reasonably safe condition and there is "simply no evidence of any hazard on Menard, Inc.'s premises at the Camby store location that was in any way involved with Plaintiff's fall from the top of the fence cage." Dkt. 39 at 12. Specifically, Menards argues nothing indicated that the fence cage was unstable or had any damage. The fence cage structure serves as a security feature, and was not designed nor constructed as a means for accessing light fixtures. Therefore, Menards argues, its duty did not require protecting Mr. Ratliff from the dangers of working on top of the fence cage:

"Here, the fence cage was reasonably fit and safe for the purpose for which it was intended—serving as a security measure."  Dkt. 52 at 6.

Mr. Ratliff responds with a two-pronged argument.  First, he argues there was a known hazardous condition because a portion of the fence cage had been cut by vandals and the main upright post was bent, weakening the front section of the structure.  To support this assertion, Mr. Ratliff has submitted the affidavits of Stephen Spence ("Mr. Spence"), of Spence's Fences, and Matthew Hurt, Mr. Ratliff's assistant.  Mr. Spence stated that during the week of October 4, 2009, he was contacted by Mr. Uran to provide an estimate to repair a chain link fence on the southeast corner of the building over a sidewalk.  When Mr. Spence evaluated the area, "it appeared that the fence had been cut by vandals and the main upright post was bent.  The bent upright weakened the front section of the structure."  Dkt. 49-6 at 2.

Second, Mr. Ratliff argues there was a latent defect in the fence cage structure creating a hazardous condition.  To support this assertion, Mr. Ratliff relies upon the expert report of Gary M. Chambers ("Mr. Chambers") of Wolf Engineering.[3]  Mr. Chambers concluded upon examination of Menard, Inc.'s site plans and the actual structure at issue, that the fence cage structure at the Camby store location was not built according to the plans' specifications. Specifically, Mr. Chambers opined that "[a]s built, the roof of the chain link security cage lacked structural stability to resist forces applied at the roof level in a direction away from the main building, making it subject to collapse, rendering it unsafe, and created a hazardous condition." Dkt. 49-4 at 4.  He further opined that "the resulting structural instability would not be something

---

[3] Menards has moved to strike portions of this export report (Dkt. 58), specifically opinions as to how the fence cage was constructed at the time of the incident, how much weight the fence cage would have been able to hold, how a difference in the design and construction of the fence cage would have prevented this incident and what duties were owed by Menard, Inc.  The Court will address this motion in a separate entry.

apparent to the untrained eye such as Mr. Ratliff, and would require a detailed examination of the roof assembly and the manner in which forces would be applied to discover." Dkt. 49-4 at 4.

### 2. Analysis

There is a genuine issue of material fact as to whether Menards breached its duty of care to Mr. Ratliff. Menards argues there was no hazard on the premises that contributed to Mr. Ratliff's fall. However, there are two pieces of facts that defeat Menards's argument. First, the assistant manager of the store, Mr. Uran, testified that he asked Mr. Ratliff if the light could be reached without the use of the lift, specifically asking if it would be possible to use a ladder, then put walking boards across the metal posts, and then put a ladder on top of that. Dkt. 40-3 at 7, 49:21–50:2. Second, Mr. Ratliff's evidence, Mr. Spence's affidavit, creates a genuine issue of fact that Mr. Uran knew of potential structural damage one week before the incident. If so, then suggesting to Mr. Ratliff that the light fixture could be reached using ladders and walk-boards, a use for which the fence cage structure was not constructed, and otherwise failing to warn Mr. Ratliff of the damage could be a breach of duty.[4] Furthermore, Menards has not established as a matter of law that the danger was known or obvious to Mr. Ratliff, thus absolving it of liability. Indiana cases suggest that in making this determination relevant factors to consider are the comparative knowledge of the parties, whether the independent contractor was in control of the site and activities, and whether the premises owner could anticipate the harm. *See Messer v. Cerestar USA, Inc.*, 803 N.E.2d 1240, 1245–46 (Ind. Ct. App. 2004); *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1265 (Ind. Ct. App. 2002); *Zawacki*, 750 N.E.2d at 415. Here, it is disputed who had superior knowledge of the possible defects. Mr. Ratliff does appear to have been in control of the worksite, but the method of reaching this light fixture was suggested by

---

[4] The record is not clear on the timeline of events. It is possible the vandalism referenced in Mr. Spence's affidavit occurred after Mr. Uran and Mr. Ratliff completed their walk-through. If so, Mr. Uran may have been under an obligation to warn Mr. Ratliff of the damage to the fence cage structure.

Mr. Uran.  Taking the facts most favorable to Mr. Ratliff, as the Court must do, the Court cannot say that Menards could not have anticipated this result, given Mr. Uran's suggestion.

Likewise, the Court cannot determine as a matter of law that there was not a latent defect that Menards knew or should have known was a hazardous condition.  If Menards knew the fence cage structure was not constructed according to the specifications and that this shortcoming involved an unreasonable risk of harm to those standing atop the fence cage structure, then Menards may have breached its duty by failing to warn Mr. Ratliff of the risk.  As this defect was not discoverable by an untrained eye and required very close inspection, it is not a defect that was known or obvious to Mr. Ratliff.  And while the Court has not yet made a determination on whether portions of Mr. Chambers's opinions should be excluded, with or without those opinions a genuine issue of fact exists.

Therefore, the Court must deny Menards's motion for summary judgment regarding liability.

**C.      Whether Mr. Ratliff Incurred the Risk of Injury**

**        1.      The Parties' Arguments**

Menards contends that Mr. Ratliff incurred the risk of injury when he essentially "inserted himself in a quasi-scientific experiment on how much weight and stress the top of the fence cage could withstand, and unfortunately for [Mr. Ratliff] his experiment failed."  Dkt. 39 at 13.  Specifically, Menards argues that Mr. Ratliff had actual knowledge of the specific risk he faced if his plan to test the structure failed.  Menards focuses on Mr. Ratliff's failure to adequately inspect the location, and that he did voluntarily choose the ladder and walk-board method of reaching the light fixture.

Mr. Ratliff relies on *Persinger v. Marathon Petroleum Co.*, 699 F. Supp. 1353, 1364 (S.D. Ind. 1988), to support his argument that he did not, as a matter of law, subjectively grasp the danger at hand.  In *Persinger*, the district court applying Indiana law held that even though decedent should have known of the dangers, incurred risk is not proven when "it is still possible (however remotely) to infer that [decedent] failed, no matter how unreasonably, to subjectively grasp the dangers at hand." *Id*.  Mr. Ratliff argues he had no knowledge of risk or danger, but instead only dreaded the task for the amount of extra time and effort it would require.

> **2.     Analysis**

"Incurred risk differs from the defense of contributory negligence in that contributory negligence occurs when a plaintiff unreasonably fails to recognize an obvious risk or danger; incurred risk occurs when a plaintiff voluntarily accepts a known risk or danger."  Here, the evidence before the Court suggests Mr. Ratliff did not subjectively grasp the danger of venturing atop the fence cage structure.  Therefore, the Court cannot hold that Mr. Ratliff voluntarily accepted a known risk or danger.  Menards's motion for summary judgment on incurred risk is **DENIED**.

**D.     Whether Mr. Ratliff Negligently Damaged the Fence Cage Structure**

Menards seeks summary judgment on its counter-claim that Mr. Ratliff negligently damaged the fence cage structure.  Because there are disputed issues of fact as to whether Menards, through Mr. Uran, told Mr. Ratliff to use the ladders and walk-board method of reaching the light fixture, the Court cannot decide as a matter of law that it was negligent of Mr. Ratliff to climb on top of the fence cage structure.  Moreover, Menards has cited no legal authority to support its motion on its counter-claim.  Therefore, Menards's motion for summary judgment on its counter-claim is **DENIED**.

## IV.  <u>CONCLUSION</u>

For the reasons set forth in this Entry, Menard, Inc.'s motion for summary judgment

(Dkt. 38) is **DENIED**.


SO ORDERED.

Date:        10/22/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana


DISTRIBUTION:

Jeffrey S. Tabor
TABOR LAW FIRM
jstabor@taborlawfirm.com

Michael Edmund Walschlager
TABOR LAW FIRM LLP
mwalschlager@taborlawfirm.com

Kevin C. Tyra
THE TYRA LAW FIRM, P.C.
kevin.tyra@tyralaw.net

Jeremy Michael Padgett
TYRA LAW FIRM P.C.
jerry.padgett@tyralaw.net